http://www.va.gov/vetapp16/Files3/1621725.txt

Citation Nr: 1621725 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 10-09 570 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri

THE ISSUES

1. Whether new and material evidence has been received to reopen a claim for service connection for hypertension. 
 
2. Whether new and material evidence has been received to reopen a claim for service connection for osteoarthritis of the right knee. 

3. Whether new and material evidence has been received to reopen a claim for service connection for osteoarthritis of the hands. 
 
4. Whether new and material evidence has been received to reopen a claim for service connection for osteoarthritis of the back.
 
5. Whether new and material evidence has been received to reopen a claim for service connection for osteoarthritis of the neck. 
 
6. Entitlement to service connection for bilateral hearing loss. 

7. Entitlement to service connection for tinnitus.
8. Entitlement to service connection for a respiratory condition, claimed as emphysema, to include as secondary to herbicide exposure. 
 
9. Entitlement to service connection for prostate cancer, to include as secondary to herbicide exposure. 

10. Entitlement to a rating higher than 50 percent for posttraumatic stress disorder (PTSD), prior to May 22, 2012, and rating higher than 70 percent thereafter. 

11. Entitlement to an initial rating in excess of 10 percent for coronary artery disease (CAD) prior to March 15, 2012, a rating higher than 60 percent from March 15, 2012 to August 24, 2012, and a rating higher than 30 percent thereafter.

12. Entitlement to an effective date earlier than July 31, 2003, for a total disability rating based on individual unemployability due to service-connected disability (TDIU).

ATTORNEY FOR THE BOARD

T. Azizi-Barcelo, Counsel

INTRODUCTION

The Veteran had active military service from May 1966 to May 1969, including service in the Republic of Vietnam.

The present matters come to the Board of Veterans' Appeals (Board) on appeal following April 2009, December 2009, and August 2011 and February 2012 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri. 

The Veteran was scheduled for but later withdrew, in March 2010, his request for a Board videoconference hearing. This case was previously before the Board in September 2013, and was remanded for additional development, which has been completed. 

The Veteran's hypertension and heart disability claims are being remanded and are addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. A November 2004 rating decision denied the claims for service connection for osteoarthritis of the right knee, hands, neck, and back, as well as a claim for service connection for hypertension; the Veteran did not appeal the decision and it became final. 

2. Evidence received since the November 2004 rating decision is cumulative or redundant of the evidence previously of record or does not relate to an unestablished fact necessary to substantiate the claim for service connection for osteoarthritis of the back.

3. Evidence received since the November 2004 rating decision is cumulative or redundant of the evidence previously of record or does not relate to an unestablished fact necessary to substantiate the claim for service connection for osteoarthritis of the neck.

4. Evidence received since the November 2004 rating decision is cumulative or redundant of the evidence previously of record or does not relate to an unestablished fact necessary to substantiate the claim for service connection for osteoarthritis of the right knee.

5. Evidence received since the November 2004 rating decision is cumulative or redundant of the evidence previously of record or does not relate to an unestablished fact necessary to substantiate the claim for service connection for osteoarthritis of the hands.

6. Evidence received since the November 2004 rating decision is not cumulative or redundant of the evidence previously of record and relates to an unestablished fact necessary to substantiate the claim for service connection for hypertension.

7. The preponderance of the evidence is against a finding that the Veteran has left ear hearing loss for VA purposes. 

8. The Veteran's right ear hearing loss had its onset in service. 

9. Tinnitus had its onset in service.

10. The Veteran is presumed to have been exposed to herbicides due to his service in the Republic of Vietnam; the most probative evidence of record indicates that a respiratory disorder was not present in service for many years thereafter and is not related to any aspect of the Veteran's service, to include exposure to herbicides.

11. The preponderance of the evidence is against a finding that the Veteran has prostate cancer that is the result of a disease or injury in active duty service, to include exposure to Agent Orange therein.

12. Affording the Veteran the benefit of the doubt, the Board finds that for the period of the claim prior to May 22, 2012, the Veteran's PTSD resulted in functional limitation most closely approximating occupational and social impairment with deficiencies in most areas.

13. The Veteran's PTSD has not been productive of total social and occupational impairment.

14. Prior to July 31, 2003, service connection was not in effect for any disabilities.

CONCLUSION OF LAW

1. New and material evidence has not been presented, and the claim for service connection for osteoarthritis of the right knee is not reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2015).

2. New and material evidence has not been presented, and the claim for service connection for osteoarthritis of the hands is not reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2015).

3. New and material evidence has not been presented, and the claim for service connection for osteoarthritis of the neck is not reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2015).

4. New and material evidence has not been presented, and the claim for service connection for osteoarthritis of the back is not reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2015).

5. New and material evidence has been presented, and the claim for service connection for hypertension is reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2015).

6. The requirements for establishing service connection for left ear hearing loss have not been met. 38 U.S.C.A. §§ 1110, 1112, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).

7. Right ear hearing loss and tinnitus were incurred in service.. 38 U.S.C.A. §§ 1110, 1112, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).

8. The requirements for establishing service connection for a respiratory disorder have not been met. 38 U.S.C.A. §§ 1110, 1112, 116, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).

9. The criteria for service connection for prostate cancer have not been met. 38 U.S.C.A. §§ 1110, 1112, 1116, 5107 (West 2014); 38 C.F.R. §§, 3.303, 3.307, 3.309 (2015).

10. Prior to May 22, 2012, the criteria for an evaluation of 70 percent, but no higher, for PTSD were met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.130, Diagnostic Code 9411 (2015).
 
11. The criteria for an evaluation in excess of 70 percent for PTSD have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.130, Diagnostic Code 9411 (2015).

12. The criteria for an earlier effective date than July 31, 2003, for the award of for a TDIU are not met. 38 U.S.C.A. §§ 5107 5110 (West 2014); 38 C.F.R. § 3.400 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to Notify and Assist

Under the Veterans Claims Assistance Act of 2000 (VCAA) VA has a duty to notify and assist a claimant in the development of a claim. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015).

The notice requirements of the VCAA require VA to notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2015). Here, VCAA notice was provided by correspondence in December 2008, July 2009, August 2009, December 2009 and February 2011. The letters also provided notice of the type of evidence necessary to establish a disability rating or effective date for the claimed disabilities under consideration, pursuant to Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

Pertaining to the claim for earlier effective date claim for entitlement to a TDIU, the claims arise from an appeal of the initial evaluation following the grant of entitlement to a TDIU and service connection for CAD. Courts have held that once service connection is granted the claim is substantiated, and additional notice is not required as any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Therefore, no further notice is needed under VCAA for the TDIU claim.

Neither the Veteran nor his representative has alleged or demonstrated any prejudice with regard to the content or timing of the notice. See Shinseki v. Sanders, 129 S.Ct. 1696 (2009 (reversing prior cases law imposing a presumption of prejudice on any notice deficiency and clarifying that the burden of showing harmful or prejudicial error normally falls on the party attacking the agency's determination). See also Mayfield v. Nicholson, 444 F.3d 1328, 1333-34 (Fed. Cir. 2006). 

As to the duty to assist, the Board concludes that VA's duty to assist has also been satisfied in this case. The RO has obtained the Veteran's service treatment records, Social Security Administration (SSA) disability records, and his post service VA and private treatment records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The Veteran was afforded a VA audiological, psychiatric, genitourinary, and general examinations. Pertaining to the application to reopen the claims for back, neck, hands, and right knee, as new and material evidence has not been submitted to reopen the claims for service connection, VA examinations or opinions are not required. Moreover, as to the claimed respiratory disorder there is no evidence of the claimed condition during service and no competent and credible evidence even suggesting that the claimed condition is related to service, to include exposure to Agent Orange. Thus, VA examinations are not warranted. 38 C.F.R. § 3.159(c)(4); see McLendon v. Nicholson, 20 Vet. App. 79 (2006); see also Waters v. Shinseki, 601 F.3d 1274, 1278 (Fed. Cir. 2010) (noting that a conclusory lay statement that a current condition is related to service is insufficient to warrant a medical examination because it would "eliminate the carefully drafted statutory standards governing the provision of medical examinations and require the Secretary to provide such examinations in virtually every Veteran's disability case").

Based on a review of the record, the Board finds that there is no indication that any additional evidence relevant to the issue to be decided herein is available and not part of the claims file. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). Moreover, the AOJ has substantially complied with the previous remand directives such that no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). Therefore, the Board finds that duty to notify and duty to assist have been satisfied and will proceed to the merits of the issue on appeal.

Analysis

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

New and Material Evidence

Generally, if a claim for service connection has been previously denied and that decision became final, the claim can be reopened and reconsidered only if new and material evidence is presented with respect to that claim. 38 U.S.C.A. § 5108 (West 2014).

"New" evidence is defined as existing evidence not previously submitted to agency decisionmakers. "Material" evidence means evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative, nor redundant of the evidence previously of record, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). The Court interpreted the language of 38 C.F.R. § 3.156(a) as creating a low threshold, and viewed the phrase "raises a reasonable possibility of substantiating the claim" as "enabling rather than precluding reopening." Shade v. Shinseki, 24 Vet. App. 110 (2010). 

For the purpose of establishing whether new and material evidence has been received, the credibility of the evidence, but not its weight, is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992). 

Despite the determination reached by the RO, the Board must find new and material evidence in order to establish its jurisdiction to review the merits of a previously denied claim. See Barnett v. Brown, 83 F.3d 1380 (Fed. Cir. 1996); Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001).

In a rating decision dated in September 1986, the RO denied the claim for service connection for arthritis because there was no evidence of arthritis in service and no evidence of a diagnosis of arthritis. In a rating decision in November 2004, the RO denied the claims for service connection for osteoarthritis of the right knee, hands, neck, and back, as well as a claim for service connection for hypertension, based on the finding that there was no evidence that the claimed disabilities were incurred in service or were caused by service. The Veteran was informed of the decision and of his appellate rights, but he did not appeal that decision or submit new and material evidence within one year following notification of that decision. Accordingly, the November 2004 decision became final. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 3.156(b); 20.302, 20.1103 (2014); see also Bond v. Shinseki, 659 F.3d 1362 (Fed. Cir. 2011); see also Buie v. Shinseki, 24 Vet. App. 242, 251-52 (2010). 

The evidence of record when the claims for service connection for osteoarthritis of right knee, hands, neck, and back, as well as a claim for service connection for hypertension, were last denied included the Veteran's service treatment records, post-service treatment records, and statements from the Veteran asserting he injured his right knee during boot camp in service. The service treatment records are negative for any complaints, history, diagnosis or findings consistent with osteoarthritis of the right knee, hands, neck, or back, or hypertension. Entry exam into service conducted in May 1966 reported anomalous foreshortening of the fingers in both hands and foreshortening of both feet. The Veteran's blood pressure reading at that time was 108/66. On separation from service in March 1969, the Veteran's spine, upper extremities and lower extremities were clinically evaluated as normal. His blood pressure reading was 118/74. In a Report of Medical History the Veteran denied a history of trick or locked knee or back trouble of any kind. 

After service, Clinical treatment notes in 1999 noted persistent arthralgias. Clinical treatment notes in 2000 recorded complaints of neck and back pain. In March 2001 a clinician noted degenerative disc disease of the cervical spine. Private treatment reports show reports of elevated blood pressure readings in December 2001 with ultimate diagnosis of hypertension. Private treatment reports show complaints of right knee pain with diagnosis of popliteal cyst, Baker's cyst, and synovitis with symptomatic plica in June 2002. The Veteran underwent arthroscopic surgery at that time for synovial biopsies and excision of plica. A treatment report in August 2002 recorded a medical history of a genetic condition, which existed in the Veteran's family for several generations, where men have very small deformed hands and feet and have diffuse arthritis. August 2002 x-rays of the lumbar spine revealed minimal degenerative changes. An April 2003 private treatment record noted that the Veteran suffered multiple medical problems including osteoarthritis with severe knee pain and hypertension. In March 2004, a clinician noted degenerative changes throughout the spine. 

The evidence received since the prior final denial includes SSA records, VA and private treatment records, which essentially document ongoing complaints and treatment for degenerative changes and osteoarthritis of the spine, hands and knee, as well as hypertension. 

As to the Veteran's hypertension claim, since the most recent denial, the National Academy of Sciences Institute of Medicine's Veterans and Agent Orange: Update 2010 concluded that there is limited or suggestive evidence of an association between the exposure to Agent Orange and hypertension. As such, this claim must be reopened.

As to the other claims, while "new" as it was not before previous decisionmakers, is not "material" for purposes of reopening the claims because the records do not relate to the basis for the prior final denial - evidence that the claimed hypertension and osteoarthritis of the neck, back, right knee and hands, were incurred in service or are otherwise related to his service. 

Also of record are statements from the Veteran asserting he injured his right knee during boot camp in service. Even assuming their credibility, the statements are cumulative and cannot be considered new and material evidence. As such, the applications to reopen must be denied.

Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed. Cir. 2014) (holding that only conditions listed as chronic diseases in § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b)). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

Moreover, where a veteran served continuously for ninety (90) days or more during a period of war, or during peacetime service after December 31, 1946, and cancer, sensorineural hearing loss, or organic disease of the nervous system, become manifest to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2015). 

A Veteran who, during active service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed to an herbicide agent, unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service. 38 C.F.R. § 3.307(a)(6)(iii). As the Veteran served in Vietnam, exposure to herbicides in conceded. 

Diseases associated with exposure to certain herbicide agents, listed in 38 C.F.R. § 3.309(e), will be considered to have been incurred in service under the circumstances outlined in that section even though there is no evidence of such disease during the period of service. The list of the diseases that are related to herbicide exposure includes prostate cancer. 38 C.F.R. § 3.309(e). COPD and emphysema, however, are not among those diseases. 38 C.F.R. §§ 3.307(a)(6)(iii), 3.307(d), 3.309(e). However, the Veteran is not precluded from establishing service connection with proof of actual direct causation. Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994). 

1. Hearing loss and tinnitus

The determination of whether a veteran has a disability based on hearing loss is governed by 38 C.F.R. § 3.385. For the purposes of applying the law administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. See 38 C.F.R. § 3.385. 

"[W]hen audiometric test results at a veteran's separation from service do not meet the regulatory requirements for establishing a disability at that time, he or she may nevertheless establish service connection for a current hearing disability by submitting evidence that the current disability is causally related to service." Hensley v. Brown, 5 Vet. App. 155, 160 (1993). The threshold for normal hearing is from zero to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Id. at 157.

At his February 2009 VA audiology examination, pure tone thresholds at 500, 1000, 2000, 3000, 4000 Hertz were 50, 30, 20, 25, and 35 decibels, respectively, in the right ear and 15, 15, 15, and 20 decibels, respectively, in the left ear. Speech recognition was 92 percent in the right ear and 94 percent in the left.

None of the Veteran's left ear hearing thresholds were 40 decibels or greater, and he did not have thresholds of 26 decibels or higher at three frequencies. His left ear speech recognition score was not less than 94 percent. Therefore, with regards to his left ear, he does not meet VA's requirements for a left ear hearing loss disability. Id. No records dated since the claim reflect hearing loss in accordance with 38 C.F.R. § 3.385. 

As to his claims of service connection for right ear hearing loss and tinnitus, the Veteran competently and credibly reports the onset of the disabilities in service. Moreover, he meets the criteria for right ear hearing loss and has a diagnosis of tinnitus. As such, service connection is warranted.

2. A respiratory condition

The Veteran contends that he developed a respiratory disorder due to exposure to herbicides in service. 

During the pendency of this appeal the Veteran has been diagnosed with a respiratory disorder, to include emphysema and chronic obstructive pulmonary disease (COPD). Accordingly, the first element of service connection, a current disability, has been established. The question becomes whether any such condition is related to service. 

Initially, the Board will address presumptive service connection due to Agent Orange exposure. Even though it is presumed that the Veteran was exposed to herbicide agents while serving in Vietnam, in order for him to be entitled to presumptive service connection on the basis of that presumed herbicide exposure, the record must also establish that he has a disease to which this presumption applies. Neither COPD nor emphysema is on the list of presumptive conditions associated with exposure to Agent Orange or other herbicides. Rather, the Veteran must be diagnosed with one of the specific diseases listed in 38 C.F.R. § 3.309(e), and he clearly is not. See Brock v. Brown, 10 Vet. App. 155, 162 (1997). Therefore, it cannot be presumed he has COPD or emphysema as a result of exposure to herbicide agents. 38 U.S.C.A. § 1116(f); 38 C.F.R. § 3.307(a)(6)(iii).

Notwithstanding the foregoing, the Veteran may still establish service connection with proof of actual direct causation. See Combee, 34 F.3d at 1043-44. "Of particular relevance to an analysis of medical evidence supporting such a nexus are factors such as whether a medical professional finds studies persuasive, whether there are other risk factors that might be the cause of the condition for which benefits are sought, and whether the condition has manifested itself in an unusual manner." Polovick v. Shinseki, 23 Vet. App. 48, 53 (2009).

After review of the lay and medical evidence of record, the Board finds that the weight of the evidence is against finding chronic symptoms of a respiratory disorder, to include COPD and emphysema, in service. The service treatment records contain no findings related to a chronic respiratory disorder, to include COPD and emphysema. On separation from service in March 1969, lungs and chest and sinuses, were clinically evaluated as normal. In a Report of Medical History the Veteran denied a history of ear nose or throat trouble, shortness of breath or chronic cough. After service, a clinical treatment note in January 2003 showed treatment for bronchitis along with a history of tobacco smoking, ongoing. Subsequent private and VA treatment records, as well as VA examination reports, note diagnoses of COPD and emphysema, along with a history of smoking. 

On the question of medical causation, medical evidence of an association or link between the current respiratory disorder, first noted after service, and service, there is no competent medical evidence that supports the claim. In fact, clinicians who have treated the Veteran the Veteran for COPD and emphysema appear to relate the disorders to tobacco use. As the competent medical evidence does not show that it is at least as likely as not that the Veteran currently suffers from a respiratory disorder, to include emphysema and COPD, that was incurred service, and in the absence of competent medical evidence linking any current respiratory disorder to any aspect of the Veteran's service, to include exposure to herbicides, service connection must be denied.

While the Veteran is competent to report symptomatology (such as shortness of breath) he does not have the requisite medical expertise to provide a link between a current pulmonary disorder (to include COPD and emphysema) and service. Indeed, a veteran is competent to report observable symptoms, because this requires only personal knowledge, not medical expertise. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). To the extent that the Veteran claims his current respiratory disorder is related to service, as a layperson, he is not competent to offer an opinion regarding the etiology of a pulmonary disorder (such as COPD and emphysema), where there is an absence of a chronic in-service disease or even a factual basis of symptoms in service or for many years subsequent to service. See Jandreau, 492 F.3d at 1377. 

3. Prostate cancer

The Veteran contends that he developed prostate cancer due to the due to exposure to herbicides.

The service treatment records do not contain any complaints, treatment, findings or diagnosis consistent with prostate cancer. After service, on VA genitourinary examination in January 2009, the examiner noted that the Veteran had undergone in a transurethral resection of the prostate (TURP) procedure was recorded in 1995.
Following an examination of the Veteran, the examiner diagnosed status transurethral resection of the prostate for benign prostatic hypertrophy. The rectal examination was satisfactory and a PSA study of 0.04 was recorded. The examiner noted that the records were negative for a diagnosis of prostate cancer and opined that the claimed condition was less likely than not related to service. 

The threshold question in any claim seeking service connection is whether the Veteran, in fact, has the disability for which service connection is sought. The Board finds it significant that the Veteran has presented no competent evidence dated during the appeal period showing an actual diagnosis of prostate cancer or evidence of any residual disability from removal of such. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). He accordingly has not shown a current disability for which service connection may be considered on any basis. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Rabideau v. Derwinski, 2 Vet. App. 141, 143-44 (1992).

Accordingly, the preponderance of the evidence is against the Veteran's claim and service connection for prostate cancer is denied. 

Higher Rating for PTSD 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Thus, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran's psychiatric disability is rated under Diagnostic Code 9411 which utilizes General Rating Formula for Mental Disorders. 38 C.F.R. § 4.130. Under that Formula, a 50 percent rating is assigned when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks (more than once a week); difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent rating is warranted for occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and the inability to establish and maintain effective relationships.

A 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of closest relatives, own occupation, or own name. 

Under such regulations, ratings are assigned according to the manifestation of particular symptoms. The use of the term "such as" in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). Accordingly, the evidence considered in determining the level of impairment under § 4.130 is not restricted to the symptoms provided in the Diagnostic Code. Instead, VA must consider all symptoms of a claimant's condition that affect the level of occupational and social impairment.

Often, treatment records and examination reports contain a Global Assessment of Functioning score. The Global Assessment of Functioning (GAF) is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental-health illness. Richard v. Brown, 9 Vet. App. 266 (1996); DSM-IV. GAF scores from 51 to 60 indicate more moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). GAF scores from 41 to 50 indicate serious symptoms (e.g., suicidal ideation, severe obsessional rituals) or any serious impairment in social or occupational functioning (e.g., no friends, unable to keep a job). GAF scores from 31 to 40 indicate some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family and was unable to work). 38 C.F.R. § 4.125; DSM-IV.

Private treatment records in March 2007, noted generalized anxiety disorder with associated depression, along with a diagnosis of substance use and abuse disorder. The clinician opined that the Veteran was disabled secondary to his chronic anxiety with associated depression. In January 2007, the Veteran complained of hyperarousal, specifically insomnia, as well as nightmares and daytime anxiety, although reportedly he was responding well to medication. The Veteran had been divorced three times. He reported having a master's degree in business and psychology. His occupational history included work as substance abuse counsellor, and his own business as communications consultant. He had stopped in 2003 due to pain. A GAF of 60 was recorded. 

In an October 2008 statement in support of claim, the Veteran reported high levels of anxiety along with three to four panic attacks a week. He also related problems with long term and short term memory. He noted that he had been married three times and did not get along well with other people. 

On VA psychiatric examination in February 2009, the Veteran reported he had not worked since 2002. He stated that he was married four times and all marriages ended in divorce. He had five adult children. The Veteran denied having any friends and indicated that he was unable to establish social relationships. His activities and leisure pursuits were limited due to physical problems. On direct mental status examination, he was oriented to person, place and time. The Veteran was described as cooperative and maintained good eye contact. His speech was clear and normal. Thought process was goal directed and thought content was without hallucinations, suicidal ideation, or homicidal ideation. There was no inappropriate behavior. The Veteran reported not being concerned about personal hygiene. He related other problems with basic activities of daily living to include getting out of bed, working outside, and grocery shopping. He denied obsessive or ritualistic behavior. The Veteran had panic attacks several times a week, depressed mood daily, and anxious moo daily. His impulse control was fair. He related sleep impairment, to include difficulty falling and staying asleep every night. The examiner assigned a GAF score of 45.

A VA treatment note in December 2009, noted the Veteran's report that he had been busy remodeling his house, spending time with his family, and was now planning on volunteering at the KCVA. He indicated that his energy, sleep, appetite and concentration were all very good. He was alert, and oriented times three. Grooming and hygiene were both good. He was dressed casually. He was cooperative with good eye contact. Speech was spontaneous and normal. His mood was noted to be "excellent" and positive. He exhibited full range of affect. Thought process was linear and goal oriented. He denied suicidal or homicidal ideation. He also denied auditory or visual hallucinations. No delusions were detected. Insight and judgement were both good. He was assigned a GAF score of 60. 

In January 2010 a clinician recorded an assessment of psychosis secondary to amphetamine abuse. He was psychiatrically admitted for four days in November 2012, for severe delusions and visual hallucination after taking amphetamine and opiates. A May 2012 VA general examination report noted a longstanding history of cocaine, opiate and amphetamine use. Most recently, he had tested positive in November 2011. 

On VA psychiatric examination in May 2012, the Veteran complained of nightmares, distressing recollections of trauma, social withdrawal, hyperarousal symptoms related to his trauma history, avoidance of trauma reminders, anxiety on a daily basis, emotional detachment, restricted range of affect, sleep disturbance, depression, anxiety, panic attacks, impaired interpersonal relationships, memory and concentration problems, exaggerated startle response, hypervigilance and neglect of personal appearance. The Veteran denied suicidal ideation since 2009. The examiner noted delusional thinking and hallucinatory episodes associated with cocaine and amphetamine abuse, in November 2009 and November 2011.

The Veteran reported living alone. He described himself as a "recluse" who engaged in little activity outside of his home. He had five adult children from whom he was estranged. He indicated befriending a man who did charity work. This friend visited the Veteran on a regular basis and the Veteran assisted him with a couple of his charity events per year. He also related having established a friendship with another individual whom he described as dear friend. 

The Veteran reported that his highest education attained was a degree in Masters Business Administration. Occupationally, his career revolved around working as a communications specialist consultant. The Veteran had also owned a communications company for three years before he became unable to work due to rheumatoid arthritis and CAD in 2002. Currently, he was in receipt of Social Security Disability and VA disability benefits. The examiner opined that the Veteran would likely have difficulty sustaining effective work relationships due in part to social withdrawal, emotional detachment, and reduced attention to personal appearance. It was further noted that the Veteran would have little remaining ability to work effectively with the public. His concentration was impaired which likely would increase the amount of time needed to complete projects, may increase the likelihood that he would make mistakes, especially mistakes of omission, in his work, and he would likely require multiple breaks throughout the work day. The Veteran also had difficulty managing stress and would be prone to symptom exacerbation if exposed to sustained stressful conditions, such as that of a work environment. The examiner determined that the Veteran's PTSD similarly impacted his ability to perform physical or sedentary employment. In sum, the examiner found that the Veteran's PTSD was productive of occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. The examiner assigned a GAF score of 45.

On VA psychiatric examination in September 2014, the Veteran complained of flashbacks, increased irritability and anger, problems sleeping, fatigue, increased appetite and weight gain. The Veteran was alert and oriented times four. He was dressed appropriately. His mood was calm. Affect was congruent. Thought was linear and coherent. Speech was appropriate. Eye contact was good. The Veteran denied current homicidal and suicidal ideation. His hygiene was described as good. The Veteran reported he was able to complete activities of daily living, such as dressing, bathing, eating, grooming, cleaning, cooking, laundry, shopping, driving, and using his vehicle. 

The Veteran stated that he had been in Arkansas since April 2013 and had just returned a week and a half earlier. He was visiting and staying with friends and family during that time. He noted that he spent a lot of time with a friend. They went fishing, out to dinner, to the movies, and worked in the garden. He stated at home spent his day praying, playing with his cat, watching the local news, showering, cooking, washing clothes, etc. The Veteran stated that he attended church on a regular basis. He stated that he had a friend with whom he did volunteer work with the poor. The Veteran visited with this friend once or twice a week. 

The examiner determined that the Veteran's PTSD was productive of occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood, intrusive distressing memories, avoidance of stimuli, feelings of detachment or estrangement from others, irritability, reckless or self-destructive behavior, hypervigilance, exaggerated startle response, problems with concentration, depressed mood, anxiety, suspiciousness, panic attacks more than once a week, chronic sleep impairment, impaired judgment, disturbances of motivation and mood. There was difficulty in adapting to stressful circumstances, including work or a work like setting

The Veteran was psychiatrically admitted in July 2015 for less than a week, due to acute psychosis. The impression was psychotic disorder unspecified, bipolar I disorder MRE manic with psychosis, versus substance induced psychosis. His GAF was noted as 41. 

Resolving all reasonable doubt in favor of the Veteran, the Board finds that the evidence shows occupational and social impairment with deficiencies in most areas such as family relations, judgment, thinking, and mood, were met prior to May 22, 2012. While in December 2009 the Veteran's psychiatric symptoms appeared to have improved, and VA treatment records reflect GAF scores of 60, on VA examination in February 2009, the examiner assigned a GAF score of 45, indicative of serious symptoms (e.g., suicidal ideation, severe obsessional rituals) or any serious impairment in social or occupational functioning (e.g., no friends, unable to keep a job). 

The evidence also shows that symptoms reported prior to May 22, 2012, are consistent with those reported after his disability rating was increased to 70 percent. In this regard, the Veteran consistently reported hyperarousal, insomnia, memory problems, nightmares, daily high levels of anxiety, and depressed mood daily. He endorsed panic attacks occurring as often as four times a week. The Veteran had been divorced three times and stated that he did not get along well with other people. Prior to May 2012, the Veteran denied having any friends and complained that he was unable to establish social relationships. The Veteran reported not being concerned about personal hygiene. Moreover, on VA examination in 2014, the Veteran endorsed suicidal ideation in 2009. 

On the other hand, the Board finds that the evidence of record does not support a higher disability rating of 100 percent at any time during the appeal. 

The evidence documented three incidents of psychiatric hospitalizations during the pendency of the claim. However, the evidence of record clearly associated these episodes with substance abuse and substance induced psychotic disorder, as distinguished from PTSD. In any event, the evidence does not support a finding that such symptomatology occurred with such frequency, duration, or severity as contemplated for the assignment of a 100 percent disability rating. For example, the Veteran's irritability and suicidal ideation did not arise to the level of persistent danger of hurting self or others as contemplated in the 100 percent rating. Additionally, while the evidence undeniably shows that the Veteran's PTSD is productive of social impairment, it is apparent from the evidence of record, to include the Veteran's reports, the Veteran has been able to establish friendships in recent years, to include two close friends, one whom he sees on a regular basis. He volunteers for charity and attends church regularly. Recently he reported visiting and staying with friends and family during from April to September 2014. He noted that he spent a lot of time with a friend. They went fishing, out to dinner, to the movies, and worked in the garden. Occupationally, although the AOJ granted the Veteran's claim for TDIU, due in pertinent part to PTSD, there is no evidence that the Veteran's PTSD is productive of total occupational impairment. In fact, the VA examiners consistently found that there was no evidence of total occupational and social impairment. 

In absence of evidence of total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); and disorientation to time or place, the Board finds that the criteria for the next higher rating, 100 percent, have not been demonstrated. There is no evidence of memory loss for names of close relatives, or his own name. The Veteran has not been found to be disoriented. The evidence does not show persistent delusions or hallucinations. The evidence does not show gross inappropriate behavior or gross impairment in communication. His thought processes have not demonstrated gross impairment. Therefore, the Board finds that the evidence does not more nearly approximate the criteria for a rating of 100 percent and a rating greater than 70 percent is denied.

Accordingly, prior to May 22, 2012, the Board resolves reasonable doubt in favor of the Veteran and finds that the criteria for a 70 percent rating for PTSD, but not higher, are met. A rating in excess of 70 percent for the entire period on appeal is denied. See 38 U.S.C.A. § 5107(b); Ortiz, 274 F.3d at 1364; Gilbert, 1 Vet. App. at 55-56.

Earlier Effective Date for a TDIU

The Veteran contends that an effective date earlier than July 31, 2003 is warranted for the grant of a TDIU. The Veteran contends that the TDIU should be effective from 2002, when the Veteran was last employed.

Claims of TDIU are considered a claim for an increased rating, and as such, the law governing the effective date for a claim for increased compensation applies. See Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001); see also Rice v. Shinseki, 22 Vet. App. 447 (2009). 

The effective date of an award of increased compensation shall be the earliest date as of which it is factually ascertainable that an increase in disability had occurred, but only if the claim for an increase is received within one year from such date. See 38 U.S.C.A. § 5110(b)(3); see also 38 C.F.R. § 3.400(o)(2). Where the increase in disability occurs more than one year prior to the date of claim, the effective date for an award of increased compensation will be the date of receipt of claim or the date entitlement arose, whichever is later. See 38 U.S.C.A. § 5110(a); see also 38 C.F.R. § 3.400(o)(1); Gaston v. Shinseki, 605 F.3d 979, 980 (Fed. Cir. 2010); Swain v. McDonald, 27 Vet. App. 219, 224 (2015)(holding that the effective date for an increased rating is predicated on when the increase in the disability can be ascertained).

For VA compensation purposes, a "claim" is defined as a formal or informal communication in writing requesting a determination of entitlement, or evidencing a belief in entitlement, to a benefit. 38 C.F.R. § 3.1(p). An informal claim is any communication or action indicating an intent to apply for one or more benefits, and identifying the benefit sought. See 38 C.F.R. § 3.155(a). Thus, the essential elements for any claim, whether formal or informal, are (1) an intent to apply for benefits, (2) an identification of the benefits sought, and (3) a communication in writing. Brokowski v. Shinseki, 23 Vet. App. 79, 84 (2009).

VA must look to all communications from a claimant that may be interpreted as an application or claim for benefits and is required to identify and act on informal claims for benefits. See Servello v. Derwinski, 3 Vet. App. 196, 198 (1992).

SSA records show that the Veteran stopped working in June 1, 2002 due to knee surgery. In October 2003, the Veteran was granted SSA benefits due to degenerative joint disease and adjustment disorder, effective May 1, 2002.

In July 31, 2003, the Veteran submitted multiple claims for VA benefits, to include claims for service connection for a psychiatric disorder and CAD. In a rating decision in November 2004, the RO granted service connection for PTSD and assigned an evaluation of 30 percent effective July 31, 2003, the date the claim was received. The claim for service connection for CAD was denied. The Veteran did not appeal that decision. Service connection was not established for any other disability. 

In October 2008, the Veteran submitted a claim for an increased rating for PTSD. He reported that he had been unable to work since 2002 due to his service connected disabilities. He also submitted a claim for service connection for CAD. A rating decision in April 2009, increased the Veteran's disability rating for PTSD to 50 percent effective October 30, 2008, the date the claim was received. A decision on entitlement to a TDIU and service connection for CAD was deferred. In December 2009, the claim for entitlement to a TDIU was denied because the Veteran failed to meet the schedular criteria for a TDIU, as his only service-connected disability was PTSD, rated as 50 percent disabling. The Veteran filed a timely notice of disagreement with that decision. He argued that he became totally disabled in October 2002. He also appealed for a higher rating for PTSD. 

Effective August 31, 2010, the list of herbicide-associated diseases in 38 C.F.R. § 3.309 was amended to include ischemic heart disease. Based on this change in the law, the RO granted the Veteran's claim for service connection for CAD in a rating decision in June 2011 and awarded retroactive benefits, effective July 31, 2003, the date of the Veteran's original claim for service connection for CAD. The RO assigned an initial 10 percent disability rating. 

In a rating decision in February 2012, the Veteran's PTSD disability rating was increased to 70 percent effective May 22, 2012. The RO also granted the Veteran's claim for entitlement to a TDIU effective March 15, 2012, the date he met the schedular requirements for entitlement to this benefit. The Veteran appealed for an earlier effective date for the grant of entitlement to a TDIU and by rating action in October 2015, the RO granted entitlement to an earlier effective date of July 31, 2003, for entitlement to a TDIU. See 38 C.F.R. § 4.16(b) (2015).

TDIU on a scheduler basis cannot be awarded prior to July 31, 2003, as the Veteran was not service-connected for any disabilities prior to that date. Even if it was factually ascertainable that PTSD and CAD, the only two disabilities for which service connection has been established, rendered the Veteran unable to engage in gainful employment prior to July 31, 2003, the fact is that prior to July 31, 2003, he was not service-connected for any disability. Therefore, they could not be considered prior to July 31, 2003, since a grant of TDIU can only be based on consideration of service-connected disabilities without regard to nonservice-connected disabilities. There is no legal basis for assignment of an effective date for TDIU prior to July 31, 2003, under the facts of this case.

ORDER

The claim for service connection for osteoarthritis of the back is not reopened, and the appeal is denied. 

The claim for service connection for osteoarthritis of the neck is not reopened, and the appeal is denied. 

The claim for service connection for osteoarthritis of the right knee is not reopened, and the appeal is denied. 

The claim for service connection for osteoarthritis of the hands is not reopened, and the appeal is denied. 

The claim for service connection for hypertension is reopened; to that extent, the appeal is granted. 

Service connection for left ear hearing loss is denied. 

Service connection for right ear hearing loss is granted.

Service connection for tinnitus is granted.

Service connection for a respiratory condition, claimed as emphysema, to include as secondary to herbicide exposure, is denied.

Service connection for prostate cancer is denied.

Prior to May 22, 2012, an evaluation of 70 percent, but no higher, for PTSD is granted, subject to the rules and regulations governing the payment of VA monetary benefits.

REMAND

As to the Veteran's hypertension claim, The National Academy of Sciences Institute of Medicine's Veterans and Agent Orange: Update 2010 concluded that there is limited or suggestive evidence of an association between the exposure to Agent Orange and hypertension. The suggestive evidence of an association can arguably be sufficient to establish an "indication" that the current disability "may be related" to herbicide exposure during service. The Court has described this threshold as being low. See McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). As such, a VA examination is necessary to adjudicate this claim.

As to the Veteran's heart disorder claim, in light of the apparently conflicting medical evidence, the Board finds that a VA examination is necessary, to include an assessment of the severity of the disability throughout the appeal.

Accordingly, the case is REMANDED for the following action:

1. Obtain any pertinent, outstanding records and associate them with the claims folder.

2. Afford the Veteran an appropriate VA examination to determine the severity of his heart disability throughout the appeal, to include an estimate of his METS, and an opinion as to whether it is at least as likely as not that the has hypertension that is related to or had its onset in service, or became manifest within one year of his discharge. The service connection opinion must consider his presumed in-service Agent Orange exposure.

3. Then, readjudicate the appeal. If any benefit sought remains denied, provide the Veteran and his representative with a supplemental statement of the case and allow for an appropriate period for response. The appeal should then be returned to the Board for further appellate review, if in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs